## Gasser's Executrix v. Michigan Mutual Life Insurance Company.

(Decided January 22, 1924.)

### Appeal from Daviess Circuit Court.

1. Statutes—Where Contention as to Insurance Policy, Based on Laws of Another State, they Must be Alleged.—In action on an insurance policy, providing that on failure to pay premiums in-

surer should be liable for only a fractional amount of the sum insured as provided by the laws of Michigan, beneficiary was not entitled to judgment for fractional amount, in the absence of allegations as to the laws of Michigan or what the fractional amount was.

2. Insurance—Right of Insured to have Policy Carried as Non-participating Term Insurance for Failure to Pay Premium Held Dependent on his Election.—Under life policy, held, that the right of insured to have the amount named in the policy carried as non-participating term insurance, in the event of failure to pay a premium, was made to depend on his electing to have the insurance so carried by written notice to the company.

3. Insurance—Loan Agreement Held Not to Change Rights of Insured Under Policy as to Extended Insurance.—A loan agreement between insurer and insured under life policy, held not to enlarge the rights of the insured so as to entitle beneficiary to recover full amount of insurance grated after default in payment of premiums, the policy providing only for a fractional liability in such case, though the loan agreement gave the insurer the option, on default in payment of premium, of deducting from the cash value of the policy the amount of indebtedness, and return the balance in cash to the insured, which option it did not act upon.

4. Insurance—Failure of Insurer to Notify Premium Due, Held no Excuse for Failure to Pay.—The rule excusing the non-payment of a premium on a life policy, on the ground that insurer failed to notify insured of premium due according to previous custom, applies only where there is a reasonable delay in making payment and does not apply where insured has failed to pay several premiums.

5. Insurance—Rule Stated as to Obligation of Insurer to Give Notice of Premiums Due.—Life insurance company is under no obligation to give insured notice of the amount and maturity of the premiums accruing on the policy, unless there is an express or implied agreement that notice shall be given or a statute requiring notice, where the policy definitely fixes the amount of the premiums and the time of payment.

E. B. ANDERSON and W. FOSTER HAYES for appellant.

SANDIDGE & SANDIDGE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On September 16, 1902, appellee issued to Eugene Gasser, the appellant's husband and testator, a policy insuring his life in the sum of $1,000.00, in consideration of an annual premium of $32.76, the first premium being paid on the delivery of the policy and the others payable on September 16 of each succeeding year during the life of the insured. He died on April 21, 1919, testate, and

this action was brought by appellant as the executrix of his will against appellee on April 19, 1920, to recover on the policy. The circuit court sustained the appellee's demurrer to the petition as amended and the appellant failing to plead further dismissed the action. Complaining of the judgment manifesting these rulings, the executrix has appealed.

The facts alleged or admitted by the petition, as amended, are as follows: The premiums due on September 16 annually were paid every year up to and including September 16, 1915. On August 2, 1916, the insured borrowed from the assurer $229.15 on his policy. The premium due September 16, 1916, was not paid in cash but a note was executed therefor. This note was renewed by the insured June 17, 1917, for the balance then due on it, $26.09, payable one month after date, and the renewal note remained unpaid at his death. The premium due September 16, 1917, was not paid, neither was the premium due September 16, 1918, and at his death no part of the principal or interest on the note for $229.15, which was payable annually, had been paid. The policy contained this provision: "If the premiums are not paid as provided herein, then in every such case the company shall not be liable for the payment of the sum insured, and this policy shall cease and determine, excepting only, that after three or more annual premiums have been paid upon this policy, it will be valid as a paid up, nonparticipating policy, for a fractional amount of the sum insured, as provided by the laws of Michigan, or at the end of the fifth policy year, or at the end of any succeeding five year period, if all premiums due have been paid and the policy is in force for its full amount, and if it be surrendered fully receipted by the insured and beneficiary within thirty days after such periods, the company will pay to the insured or beneficiary such a cash surrender value, for the policy, an amount equal to the reserve of the policy, exclusive of the dividend additions, computed by the American Experience Table of Mortality, with 4% interest, less any indebtedness to the company."

The appellant did not sue for a "fractional amount of the sum insured as provided by the laws of Michigan." The insurer had offered to pay what it claimed this amounted to. This was refused by the appellant and the suit was brought on the policy as a subsisting obligation to pay $1,000.00, less the sums above set out as credits thereon. But while the petition admits this offer and the

appellant's rejection of same, as it failed to allege what the laws of Michigan provided on the subject, or what the "fractional amount of the sum insured, as provided by the laws of Michigan" was for which the policy, after the insured's default in the payment of a premium maturing later than the third, would become valid as a "paid up, nonparticipating policy," there was no showing by the petition of a state of facts that would have authorized the circuit court, even if such relief had been asked, to render judgment in the appellant's favor for the fractional amount of the su minsured, as provided by the laws of Michigan.

We find little difficulty in ascertaining from the contract of insurance the rights of the parties. By the first clause of the policy, it was provided that in the event all annual premiums should be paid during the life of the insured, when due, the insurance company would, at the death of the insured, pay the beneficiary named in the policy, or if none, to the personal representative or assigns of the insured $1,000.00, to be credited by any indebtedness of the latter to the company; but by the clause above quoted it is provided that if any premium should not be paid after the third the policy would in that event become and remain valid only as a paid up, nonparticipating policy "for a fractinoal amount of the sum insured, as provided by the laws of Michigan," payable at the death of the insured, but from which should then be deducted any indebtedness of the insured to the insurer. The latter part of the clause in question provides for a surrender of the policy, at the option of the insured, at the end of the fifth policy year, or at the end of any succeeding five year period, and for payment of its cash surrender value. But as the option thus conferred was one that the insured alone could avail himself of and the option admittedly was not exercised by him during his lifetime, consideration of this provision is of no importance in determining the rights of the parties to the present action.

Another provision of the policy reads as follows: "It is hereby agreed, that after the payment of three full annual premiums, the insured may, in lieu of the paid up insurance provided for in this policy No. 74235, elect, by giving written notice to the company within three months after the premium is due and unpaid, to have the $1,-000.00, named in this policy carried as nonparticipating term insurance, without further payment of premiums,

according to the following table, provided there is no indebtedness against the policy. . . . The full reserve of this policy computed on the American Experience Table of Mortality at 4% per annum shall be used as a single premium to purchase the extension at the company's published rates, . . ."

Obviously, the right of the insured under this provision to have the $1,000.00 named in the policy carried as nonparticipating term insurance in the event of failure to pay any premium, was by its terms made to depend on his electing to have the insurance so carried, through the required written notice thereof given the company within three months after the maturity of the unpaid premium, and as it is neither alleged in the petition nor amended petition that such election was made by the insured or written notice thereof given by him to the company within the time above stated, the policy by its terms was automatically converted into a paid up, nonparticipating policy for a fractional amount of the sum insured, as provided by the laws of Michigan. But, as previously remarked, because of the absence from the petition, as amended, of the averments of fact necessary to that end the appellant was not in a position to claim that the policy was valid as a paid up, nonparticipating policy for a fractional amount of the sum insured as provided by the laws of Michigan and seek to recover such fractional amount, hence she did not attempt to do so.

It is admitted in the petition that the premiums due September 16, 1917, and September 16, 1918, respectively, were not paid; that at the time of the failure to pay these premiums the insured owed the appellant company two notes, one of $26.09, of date June 16, 1917, and accrued interest, balance on premium due September 16, 1916, and one of $229.15, dated August 2, 1916, and accrued interest for money borrowed by the insured on the policy. These admissions, when considered in connection with the provisions of the policy, *supra,* make it patent that the insured, after September 16, 1917, was only entitled to a paid up, nonparticipating policy for a fractional amount of the sum insured, as provided by the laws of Michigan, and this fractional amount of the sum insured, as provided by the laws of Michigan, less any indebtedness owing by the insured to the company at his death, the appellant was entitled to collect upon the policy in question as a paid-up, nonparticipating policy, and might have recovered if sued for. But as she failed and refused to

allege the facts entitling her to this relief, no cause of action was stated in her behalf by the petition as amended.

The loan agreement between the insurer and insured, which was executed August 2, 1916, when the note of $229.15 was executed to the former by the latter for the loan to him of that amount on the policy, is as follows:

"I hereby covenant and agree that the principal of this note, with interest due and accrued, shall become due and payable whenever the insurance under the said policy shall become due and payable, or whenever the total indebtedness of the undersigned shall equal or exceed the loan value of the said policy, or whenever any premium on the said policy, or interest on this note, shall not be paid when due. That if default be made in the payment of any premium, or interest, and the policy be not surrendered for its cash value, less the indebtedness, within ten days after such default, the said company after one month's notice in writing, addressed to Eugene Gasser at Owensboro, county of Daviess, state of Ky., shall deduct from the cash value of the policy the amount of this and all other of *my* obligations to the said company with interest due on same, and return the balance, if any, to *me,* or at its option, deduct the indebtedness from the then present value of the paid-up insurance provided for in the policy and use the remainder, if any, as a net single premium to purchase paid-up insurance."

This agreement did not lessen the rights of the insurer or enlarge those of the insured under the policy; certainly it did not, as claimed by the appellant, give the insured the right to demand, or to her as beneficiary under the policy the right to recover the full amount of insurance granted by the policy, after there had been a default by him in the payment of premiums, when he would not have been entitled thereto under its provisions. While the agreement provides that if default be made in the payment of any premium or interest, and the policy be not surrendered for its cash value, less the indebtedness of the insured, within ten days after such default, the company, after one month's notice in writing, shall deduct from the cash value of the policy the amount of indebtedness and interest and return the balance in cash to the insured; or at its option deduct the indebtedness from the then present value of the insurance provided

for in the policy and use the remainder, if any, as a net single premium to purchase paid-up insurance, did the failure of the appellee to exercise either of these options give the appellant the right, as alleged in her petition, to rcover the face value of the policy, less the indebtedness of the insured to the appellee? We think not. On the contrary the failure of the latter to act upon its rights under the loan agreement in nowise affected its right to rely on the provisions of the policy defining the rights of the insured in case he failed to pay the annual premiums. The option given the appellee by the loan agreement was to provide a summary way of terminating the loan contract, not to change or abrogate the terms of the policy.

In the state of case here presented what were the rights of the parties? To this question we can find but one answer. By the terms of the policy and loan agreement as well the insured was entitled, if any premium after the third should not be paid, to a paid-up, nonparticipating policy for a "fractional amount of the sum insured as provided by the laws of Michigan;" and the failure of the appellee to exercise either of the options mentioned, left the policy in force only to that extent. Therefore, in no event was the appellant entitled to recover the face value of the policy, less the indebtedness of the insured to the appellee.

To avoid the effect of the nonpayment of premiums as provided in the policy, the plaintiff made in her petition to which the demurrer was sustained, the following allegations:

"She further states that from the date of said policy in 1902, until the year 1917, it was the uniform custom of defendant company and her said testator that the annual premiums on said policy should be and they were paid (after the first premium) to defendant's general agent at his office in the city of Louisville, Kentucky, being sent to said agent by mail and by means of checks; that during said years many of said premiums were in the first instance paid by her said testator in whole or in part by the execution of notes therefor, and that the notes so executed were in many instances renewed in whole or in part and frequently for a number of times, and the checks in payment of said notes in whole or in part were sent by mail as aforesaid to the said general agent at Louisville and received and accepted by him;

and that during all said time it was the uniform custom of defendant and of its general agent to notify said testator by mail in advance when any premiums or any of said notes executed for a premium or part thereof would be due and payable, and her said testator came to and did rely upon the custom of defendant and its said agent so to notify him in advance when any premium or note would be due and he was not required to and did not himself try to keep in mind the dates when said premiums or any of said notes would mature, but relied and depended entirely upon said defendant and its said agent to notify him in advance according to its said custom of the maturity of same; that when the annual premiums due in September, 1917, 1918, became due respectively, defendant and its said agent neglected and failed to notify her said testator in advance or at all that said premiums or either of them would be due or had become due and her said testator did not know of the maturity of said premiums or either of them, and his attention was not called thereto; and that because of his reliance upon said custom and his expectation that the same would be continued, he overlooked the maturity of said premiums, and for that reason alone failed to pay same; that he was ready, able and willing to pay said premiums and expected to pay same and had no intention whatever of not paying same or permitting same to become in arrears, and would not have failed to pay same or either of same but for said custom and his reliance thereon and his expectation that said custom would be continued and that he would be notified as he had always been theretofore when said annual premiums would become due.''

We have been referred by counsel for appellant to some cases under which it is maintained that these allegations were sufficient to warrant a recovery on the policy. But most of the cases excusing the nonpayment of a premium on this ground were cases where there was only a reasonable delay in making payment resulting wholly from the failure of the insurer to give notice according to its previous custom. That is not this case. The assured failed to pay the note for $26.09 due July 17, 1917. He failed to pay the annual interest on the note for $229.15, due August 2, 1917. He failed to pay the premium due September 16, 1917. Thus things ran along

until September 16, 1918, and he failed to pay that premium. He then died on April 21, 1919, without communicating with the company in the meantime in any way or taking any action to preserve his rights under the policy. He knew from his policy that its life depended on his paying the annual premium on September 16 of each year. He paid these premiums for fifteen years and so necessarily knew about the premiums and when they were payable. His course after he obtained the loan of $229.15 on his policy warranted the company in assuming that notice to him would be futile; his conduct clearly indicated a purpose not to continue the insurance; for if not, he had no right to remain silent so long. The failure to receive any further notice from the company should have apprised him, if he wished to continue his insurance, to pay what he owed or arrange it with the company. He could not indefinitely remain silent and take no action under the circumstances.

What we regard as the correct doctrine on this subject is thus stated in Cooley's Briefs on the Law of Insurance, vol. 3, p. 2281:

> "In the case of ordinary life insurance, where the policy fixes definitely the amount of the premiums and the time of payment, the insurance company is under no obligation to give the insured notice of the amount and maturity of the premiums accruing on the policy, unless there is an express or implied agreement that notice shall be given or a statute requiring notice." May on Insurance, vol. 2, sec. 356a.

The weight of authority seems to be to the effect, that an obligation to give notice of the maturity of insurance premiums cannot be imposed by mere custom. Thompson v. Insurance Co., 104 U. S. 252; Gatterman v. American Life Ins. Co., 1 Mo. App. 300; Grant v. Alabama Gold Life Ins. Co., 75 Ga. 575. It is admitted in this case that the appellee failed for two years in succession to give the insured notice of the maturity of his premiums, and this was equivalent to advising him that he need no longer expect notice. Furthermore, in the jurisdictions where it is held that a custom of giving notice of the maturity of premiums will impose an obligation to give notice, failure to give it seems to have been seized on by the courts to avoid forfeiture, which, as we have seen, did not result from the failure of notice in this case, for the policy was not forfeited by reason of the failure of notice. The ef-

fect of such failure was merely to automatically continue the validity of the policy for a fractional amount of the sum insured, as provided by the laws of Michigan. It is manifest from the facts here pleaded that by the failure of the insured to pay the annual premiums for two years, after borrowing the full value of the policy, he intended to abandon his insurance.

We find no error in the action of the circuit court in sustaining the demurrer to the petition as amended.

Judgment affirmed.