12634

FARMERS' & MERCHANTS' BANK v. METROPOLITAN LIFE
INSURANCE COMPANY

(149 S. E., 742)

*Messrs. Elliott, McLain, Wardlaw & Elliott,* and *Mays & Featherstone,* for appellant,

*Messrs. Grier, Park & McDonald,* for respondent,

April 9, 1929.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

This is an action on two life insurance policies, and grows out of the following undisputed facts:

The insurance company issued to one Brown Pressley on April 24, 1922, two policies of insurance on his life for $1,000 each. The policies were immediately transferred and assigned to the plaintiff bank with the company's consent indorsed upon each policy. The first premium and all other premiums were paid by the bank. In fact, the bank took the policies on the life of Brown Pressley and handled the matter from the beginning with the company.

The annual premiums were due on April 24 of each year, and the policies provided for 31 days of grace. The premiums were always paid by plaintiff promptly, within the days of grace, until 1926.

When the premium was due in 1926, the cashier of the bank happened to be away, and it was not forwarded until May 27, 1926, two days after the grace period had expired, or three days counting the 27th of May, on which day the bank sent checks to the defendant to pay the premiums. No receipt was forwarded to plaintiff for the payment, and on June 11, 1924, the bank wrote the defendant inquiring for the receipts. The defendant answered this letter on June 14, as follows, still retaining the checks: "In response to your letter of June 11th, we beg to advise that we received the premiums after the grace period expired, and it was necessary for us to get a health certificate completed by the insured. We sent the certificates to him but he failed to return them to us. We are sending same to you, and will thank you to have him answer questions 1, 2, 3, 4 and 5, sign and have his signature witnessed and return them to us."

It will be noticed that the defendant required Pressley only to sign the certificates; no examination was required. The plaintiff then looked for Pressley, the insured, to comply with the request, and continued its search up until July 7, 1926, when it received the following letter: "Some time ago you sent us two checks for $53.90 each in payment of the April 24th premium on the above-numbered policies. As the grace period had expired on these policies, it is necessary that we get satisfactory health certificates completed by the insured, but up to the present we have been unable to get them. We sent to the insured but he failed to complete and return them, and we also sent two of these forms to you and you have not returned them to us either. As we cannot revive these policies until we get the health certificates completed, we are returning the checks to you herewith. As soon as you are able to get these forms completed, return them to us with the checks." This letter, while returning the

checks, advised plaintiff to return them with the certificate as soon as it was completed. Nearly three months had expired from the due date, April 24th to July 7th, when this letter was written returning the checks.

The plaintiff continued its search and had the agent of the insurance company assist. The record shows a continuous search from that time up until October, when it was learned that Pressley had died. Proof of death was made, and the company refused to pay, except $331.72 which it tendered in full satisfaction. Four premiums had been paid, and under the terms of the policy extended insurance for the full amount attached for three years and two months from April 24, 1926. Pressley died within six months.

He had three months after lapse to elect, and failing, the company claimed the right to elect for him, under the following provision: "If the owner shall not, within three months from due date of premium in default, surrender this Policy to the Company at its Home Office, for a cash surrender value or for endorsement for paid-up insurance, or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option."

The plaintiff contended that the company, in effect, extended this time for election by its actions, until it was determined whether Pressley could be reinstated, and misled plaintiff until the period for election had expired. Or, in legal terms, waived the provision as to election, and was estopped by its conduct from taking advantage of it.

The jury solved these issues in favor of plaintiff and rendered a verdict for plaintiff for the amount due on the policies. From this judgment the defendant appeals on several exceptions, alleging error: First, in failure to direct verdict in its favor; second, in the charge as to waiver; third, as to the admission of testimony, and, fourth, as to the refusal of new trial.

We do not see any error in not directing a verdict for appellant, as complained of by the exceptions. The appellant

knew the respondent held an assignment of the policies; they had made the proper assignments on the policy. The respondent gave a check for the insurance and asked for receipts; the appellant did not answer these requests for some time; notified the insured and did not notify the respondent, although they knew the respondent owned the policies and was trying to locate the insured. The action of the appellant misled the respondent, and for that reason the respondent did not select and exercise the option allowed by the policy within three months; his Honor was clearly right in leaving the jury to find whether or not this was waiver.

It can be inferred from the evidence that no option was to be exercised until reinstatement was passed upon. We see no error as made by the exceptions. The facts of this case show clearly that the position of the insurance company, in undertaking to reduce its policy by reason of a condition which it brought about itself, is one that ought not to be countenanced by the Court. It is undertaking to destroy its contract, after it led the bank into a position where it did not exercise its rights under the policy. This was caused, as is shown clearly by the record, by the conduct of the company. Its purpose at the time was good and fair, but in the end it used it to defeat the very purpose which both parties had in view.

Exceptions are overruled, and judgment affirmed.

Messrs. Justices Blease, Stabler and Carter concur.

Mr. Justice Cothran (dissenting) : The complaint alleges two causes of action; the allegations in each being the same, except that in each a separate policy is described, both containing the same provisions, between the same parties, in the same amount, and issued at the same time. It will be convenient to discuss the appeal as it relates to one of the policies, the observations being applicable to the other as well.

The undisputed facts are these:

On April 24, 1922, the company issued to one Brown Pressley a policy upon his life for $1,000; on May 6th, Pressley assigned the policy to the plaintiff bank; the assign-

ment was recognized by the company upon the same day; after the first premium, the others were payable upon the anniversary of the policy, April 24th, of each year; the bank paid the first and the premiums due April 24, 1923, 1924, and 1925; the premium due April 24, 1926, was not paid at its maturity. Under the terms of the policy, the insured had 31 days of grace within which to pay the premium without penalty of any kind; the bank, for the reason stated that its cashier on May 25th was out of town, did not pay the premium within the 31 days; on May 27th, two days after the period of grace had expired, the bank forwarded to the company a check for the premium; on May 29th, the company mailed a letter addressed to "Brown Pressley, 402 Main Street, Greenville, S. C." (the street address of the bank), the following letter:

"We acknowledge receipt of your remittance of $107.-80 which you state is in payment of premiums on Policy Nos. 0329946–47 issued by this Company. We have to advise that this Policy is lapsed owing to expiration of thirty-one days of grace from due date. If you wish to apply for revival of policy and to have us accept the amount remitted by you, provisionally, pending acceptance or rejection of your application, you may do so by filling out and forwarding the enclosed form of application for revival.

"You will, however, understand that the payment now tendered by you is not accepted, and we are holding your remittance, awaiting your determination as to application for revival. The remittance will be returned to you at your request, or, in the absence of request, or receipt of your application for revival of your policy, it will be returned within ten days from date of this letter."

The cashier of the bank denied the receipt of this letter, although it was addressed to Pressley at the bank's place of business; it showed that it was from the company in which the bank held the policy, and presumably the bank was interested in it.

The cashier testified that he received from the company, 10 days before the maturity of the premium due April 24th, notice of its maturity (which with the 31 days of grace, gave him 41 days within which to pay it), but that he always waited until the last day of the grace period to pay, and that on that day he happened to be out of town.

On June 11th, the bank wrote the company asking for receipt for the premium forwarded on May 27th.

The company replied on June 14th as follows: "In response to your letter of June 11th, we beg to advise that we received the premiums after the grace period expired and it was necessary for us to get a health certificate completed by the insured. We sent the certificates to him but he failed to return them to us. We are sending some to you and will thank you to have him answer questions 1, 2, 3, 4 and 5, sign and have his signature witnessed and return them to us."

Hearing nothing from the bank, the company, on July 7th, wrote the bank as follows: "Some time ago you sent us two checks for $53.90 each in payment of the April 24th premium on the above-numbered policies. As the grace period had expired on these policies it is necessary that we get satisfactory health certificates completed by the insured but up to the present we have been unable to get them. We sent them to the insured but he failed to complete and return them and we also sent two of these forms to you and you have not returned them to us either. As we cannot revive these policies until we get the health certificates completed we are returning the checks to you herewith. As soon as you are able to get these forms completed return them to us with the checks."

To this letter the bank made no reply, and acting upon the suggestion of the company, but without any notice to the company of its purpose, made numerous efforts to locate Pressley, in order to comply with the requirements of "completed health certificates," continuing them until October, when it learned of the death of Pressley at some time between June and October, not stated in the record.

Under the policy, the failure to pay any premium, when due, automatically effected a lapse of the policy; it provided, however, that if such lapse should occur after three full years' premiums had been paid, the owner (the insured or his assignee) was entitled to one of the three options, provided that, within three months from the due date of the premium in default, the insured should file with the company, at its home office, a written request, accompanied by presentation of the policy for legal surrender or indorsement, signifying his election.

These options are:

1. Cash surrender value.

2. Nonparticipating paid-up insurance.

3. Term insurance (or, as it is usually understood, extended insurance) for the full amount of the policy, for a limited period governed by the time that the policy was in force; in the present instance three years and two months.

It is provided in reference to the exercise of these options: "If the owner shall not, within three months from due date of premium in default, surrender this Policy to the Company at its Home Office for a cash surrender value or for endorsement for paid-up insurance or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option."

The provision in reference to a reinstatement of the policy, in the event of lapse for nonpayment of premiums, is as follows: "If this Policy shall lapse in consequence of non-payment of any premium when due, it may be re-instated *at any time* upon the production of evidence of insurability satisfactory to the Company, and the payment of all overdue premiums with interest at six per centum per annum. * * * "

The main issue in the appeal is to be determined upon the defendant's motion for the direction of a verdict in favor of the plaintiff, for the amount due upon the policy under the second option, for "nonparticipating paid-up" insurance,

$331.72, which was refused. The motion was made upon the following grounds: "Admittedly the policies had lapsed for non-payment of premiums due on 24th April, 1926, and plaintiff had made no election under the provisions of paragraph five of the policies entitled *'Options on Surrender or Lapse.'* That under the provisions of said paragraph the second option contained therein automatically went into effect and plaintiff is entitled to a directed verdict in the sum of $331.72 which is admitted to be the amount due under the second option. And upon the further ground that no reasonable inference of waiver by the defendant can be drawn from the testimony; the error being that since admittedly the policies had lapsed for non-payment of premiums and plaintiff had made no election under the provisions of paragraph five of the policies his Honor should have held that no reasonable inference of waiver could be drawn from the testimony, and under the provisions of said paragraph the second option contained therein automatically went into effect and plaintiff entitled to a directed verdict for the sum of $331.72 which is admitted to be the amount due under the second option."

The contention of the bank is that, by the suggestion of the company that the policy be reinstated, notifying the insured by letter to that effect, notifying it by letter to the same effect, and forwarding the blank application therefor, the company misled it into supposing that the right of reinstatement was all that was left to the insured or to the bank, upon the lapse of the policy and induced the bank thereby to allow the time for exercising its election under the option provision to expire. It insists therefore that the company has either waived its right to object that the election of extended insurance was not made within the prescribed period of three months "from the date of premium in default," or that it is estopped from its right under the option provision to force the second option, "nonparticipating paid-up insurance," upon the insured or bank.

The matter must be determined in the light of the situation presented *at the time of the lapse,* not in the light

of events that later transpired. As the insured died within a few months after the policy lapsed, *if that event could have been foreseen,* it is easy to see that the option of extended insurance would have been preferable to any one of the three options, as well as to a reinstatement of the policy; but viewing the situation as it was presented at the time of the lapse, a choice of reinstatement of the policy seems preferable.

There is nothing to show but that the insured was in good health at the time of the lapse, and it is but fair to act upon the assumption that he was an insurable risk at that time. Extended insurance would have expired in three years, and if he had survived that period, the policy would have terminated. Reinstatement meant that the policy would be continued indefinitely, upon the terms originally set forth in the policy, at the same premiums, covering a period of time possibly far in excess of the limit of the extended insurance. Reinstatement was naturally to the mutual advantage of both parties. It was better for the company; for it was in the business of insurance, and would profit by the continued payments of premiums; it was better for the insured, as a lapse of the policy would mean increased premiums, due to five years' advanced age, in the event that a new policy be taken out. The bank had taken out the insurance to secure a debt due by the insured, and it was to its interest that the policy be not limited, as it would have been by extended insurance. The company was therefore clearly within its rights in suggesting a course which was so palpably in the interest of all parties concerned in the matter.

*Now,* since it has happened that the insured died within a few months after the lapse, the cashier of the bank is convinced that if the company had not made the suggestion of reinstatement, he would have signified his acceptance of the extended insurance option. He testified that although the policy was in his possession for four years, he never read it and knew nothing of the option provision. It is difficult to place much reliance upon his statement of what he would

have done but for the company's suggestion, in the light of his statement that he knew nothing of the option provision.

After the bank had notice of the lapse of the policy, either by the letter of May 29th, from the company to Pressley, or by the letter of June 14th, from the company to the bank, or by the letter of July 7th, from the company to the bank, it is passing strange that the cashier did not, at some of those times, examine the policy to ascertain what were the rights of the policyholder after such lapse had occurred. On July 7th, the day the checks were returned, the bank still had until July 25th within which to exercise the option now claimed; if he had examined the policy then, the cashier would have ascertained that, notwithstanding his futile efforts to locate Pressley, the bank had 49 days within which to exercise the option; he would have ascertained that he was not tied down to the right of reinstatement but still could exercise his option. If he was ignorant of his rights under the policy, and that ignorance was the result of his own negligence, not induced by any word or act of the company, it does not seem just to hold the company responsible for it; to charge it with a liability which *by contract* could be incurred only in a certain way which was not pursued.

The company had a right to assume that being in possession of the policy the cashier knew its terms, and knew, notwithstanding the suggestion of reinstatement, that his election under the option provision was not and could not be affected by the attempt to reinstate the policy.

A party to a contract, who accepts and holds it, is conclusively presumed to know its contents in the absence of fraud on the part of the other party to prevent his reading it. *Union Cent. Life Ins. Co. v. Hook*, 62 Ohio St., 256, 56 N. E., 906; *Bostwick v. Mutual Life Ins. Co.*, 116 Wis., 392, 89 N. W., 538, 92 N. W., 246, 67 L. R. A., 705; *Upton v. Tribilcock*, 91 U. S., 45, 23 L. Ed., 203; 1 Joyce, Ins. (2d Ed.), § 66b.

In the *Upton case,* just above, the Supreme Court of the United States said: "That the defendant did not read the charter and by-laws, if such were the fact, was his own fault. It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they were written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

The holder of a policy is, of course, as much bound by its terms as if he had signed it.

In *Ginyard v. Lincoln Reserve Life Ins. Co.,* 135 S. C., 48, 133 S. E., 227, the Court said: "The insured had the policy in his possession, and was acquainted with its terms. He had a right to accept either one of the three options which he deemed most beneficial to himself, and declined to make his election; whereupon the respondent exercised the right expressly given it under the terms of the policy, and converted the cash value into paid-up insurance, amounting to $114."

The right to exercise any one of the three options, and the right to a reinstatement of the policy, are entirely separate and distinct. There could have been no objection to the policyholder pursuing the right to reinstatement to a final conclusion and, if it should fail, to fall back upon the choice of options. The fact that the insured could not furnish satisfactory evidence of his insurability, in order to obtain reinstatement, could not affect his right to a choice of the options, provided he did not delay the effort to obtain reinstatement until the expiration of the three months within which he must have exercised his choice of options; and if no act of the company produced or induced such delay, the insured is in no position to complain.

The cashier's failure to exercise his election under the option provision, according to his own admission, was due,

not to anything done by the company, but to his own ignorance of the terms of the policy, with the knowledge of which he is presumptively charged. The company did nothing to induce him to think that he did not have the options provided for in the contract of insurance. If he did not know of those rights, it was his own fault in not familiarizing himself with the provisions of the policy. Unquestionably he had the right, notwithstanding his efforts to locate Pressley for the purpose of securing a reinstatement of the policy, to fall back upon the option provision if exercised in time; the company did nothing, said nothing, that could possibly be construed into a denial of that right, and therefore cannot be held to either waiver or estoppel as claimed by the plaintiff.

There is no controversy over the *fact* that the insured failed to pay the premium due on April 24, 1926, when it was due, or within 31 days of grace thereafter. There is no controversy over the *law* that such failure, under the express terms of the policy contract, effected a lapse of the policy.

I do not agree to the proposition made and reiterated by his Honor the presiding Judge, in his charge, that upon failure of the insured to pay the premium of April, 1926, *"the company then had the right to declare the policies forfeited and to treat the insurance at an end."*

This cannot be the effect of the nonpayment of the premium. The policy provides that, in that event, the insured shall have the right, within three months, to exercise his will to accept any one of the three options named, under no other conditions than that application be made within the time stated; or the right, *at any time*, to secure a reinstatement of the policy, "upon the production of evidence of insurability satisfactory to the company, and the payment of all over-due premiums, with interest at six per cent. per annum."

It follows, necessarily, that the policy had not been forfeited, nor had the company the right to treat the insurance

as at an end, by reason of the occurrence of the lapse. The existence thereafter of the right to elect one of the three options, or to secure a reinstatement of the policy, is conclusive that the policy had not been forfeited or at an end by reason of the lapse.

After the lapse of the policy, the future interest of the insured depended *upon action to be taken by him:* Either to indicate the form of option desired; to comply with the provisions as to reinstatement; or to take no action at all. In the last event, he left it to the company to force upon him the second option: "Nonparticipating paid-up insurance."

If the action of the company, in suggesting or insisting upon the exercise of the right to reinstatement, or even if the company had denied the exercise of the right of option, and openly declared that the right to reinstatement was all that the insured had, and thus had caused the insured to lose the right of option by lapse of the time condition, could be considered evidence of waiver, it could only be evidence of the waiver *of the time condition* within which the option had to be exercised. It could not be considered evidence of waiver of the lapse of the policy, for in every communication the company plainly asserted and claimed that the policy had lapsed, and there was no denial of that fact.

In the case of *Gunter v. Philadelphia Life Ins. Co.,* 130 S. C., 1, 125 S. E., 285, the Court said: "Before an insurance company can be held to have waived a forfeiture provided for in the contract, it must appear: (1) That it had knowledge of the act of the insured which worked a forfeiture; (2) that it entered into negotiations with the insured which expressly or impliedly recognized the continued validity of the policy; (3) that the insured was induced by such negotiations, of the character stated, or by conduct of the company, to incur expense or trouble under a reasonable belief that the loss would be paid, the forfeiture waived."

See *Whaley v. Guardian Fire Ins. Co.,* 124 S. C., 173, 117 S. E., 209.

If the action of the company could be considered evidence of a waiver of the *time condition* within which the option had to be exercised, that would not help the insured, or his assignee the bank, for the reason that the option *has never been exercised.*

Suppose that the action of the company was evidence of a waiver by the company of the right to force the second option, "nonparticipating paid-up insurance," upon the insured, still that would not help the insured or the bank, his assignee, for the right to receive the benefit of either of the remaining options depended upon notification to the company of the election to take one or the other, which has never been furnished. It cannot be assumed that he would have elected one or the other, or which one.

It is stated in the opinion of the Chief Justice: "The plaintiff contended that the Company, in effect, *extended the time for election* by its actions, until it was determined whether Pressley could be reinstated, and misled plaintiff until the period for election had expired. Or, in legal terms, *waived the provision as to election,* and was estopped by its conduct from taking advantage of it. The jury solved these issues in favor of the plaintiff, and rendered a verdict for plaintiff for the amount due on the policies. * * * It can be inferred from the evidence that *no option was to be exercised until reinstatement was passed upon.*" (Italics added.)

If the conduct of the company can be considered as evidence of a waiver *of anything at all,* I think that the Chief Justice has properly stated, as I have indicated above, that it was only of the three months' limit of time for the choice of one of the three options provided for; and that after the application for reinstatement had been passed upon, the insured had the right to exercise that choice.

Concede that to be true, it is impossible to base a recovery upon such an hypothesis, for the reasons that the application for reinstatement was never submitted, and of course not passed upon; and there has up to this time been no in-

dication by, or in the interest of, the insured, of a choice of the options.

It is stated in the opinion of the Chief Justice: "It will be noticed that the defendant required Pressley only to *sign* the certificate; *no examination was required.*" (Italics added.)

·I do not find any warrant for this statement. The right of reinstatement depended upon evidence satisfactory to the company of the insurability of the applicant for reinstatement. It is hardly to be expected that the company would have been satisfied of his insurability by his answers to the questions indicated. In fact, the letter of May 29th to him referred solely to *his application* for reinstatement, which of course would be signed by him alone. It was to be received, as specifically stated, subject to the company's "acceptance or rejection," which of course would be governed by other evidence of his insurability than what was contained in his *application.* This is clear from the letters of June 14th and July 7th to the bank, requiring "completed health certificates," which could not have referred simply to the application of the insured.

Counsel for the bank state in their brief: "The bank proceeded upon the assumption that the matter of exercising options was open until a determination was had as to reinstatement." This cannot be, in the light of the cashier's testimony that he had not read the policy and knew nothing of the options.

It is stated in the opinion of the Chief Justice: "The facts of this case show clearly that the position of the Insurance Company in undertaking to reduce its policy *by reason of a condition which it brought about itself,* is one that ought not to be countenanced by the Court." (Italics added.)

I do not see how this possibly could have been the case. The "condition" that was "brought about" was: (1) That there was a lapse in the policy by the nonpayment of the premium due April 24th, upon that date, or within the 31-

day grace period thereafter. Of the coming maturity of this premium the bank was duly notified, 10 days before April 24th. It preferred to wait until the last day of grace, 41 days thereafter; and allowed the time to run out. This certainly was not a condition brought about by the company. (2) In an immediate reply the company notified the insured of the lapse and suggested an application for reinstatement, conceded by counsel to have been to the mutual benefit of all parties. This certainly did not produce a condition unfavorable to the insured. (3) The company then later notified the bank that the policy had lapsed, and suggested to it to institute the necessary steps for a reinstatement of the policy. This was on June 14th. It is true that in this letter the company made no reference to the election under the option provision; it was under no obligation to do so, as the bank was in possession of the policy and is presumed to have known its terms. It certainly made no representation at all reflecting upon the right which the insured had of exercising his choice under the option provision. The fact that the bank was thereafter relying solely upon its right of reinstatement, and failed to exercise its option, was due to the negligence of the bank in not ascertaining the terms of the contract, evidenced by the policy in its possession. So far as waiver is concerned, the facts show a much stronger case against the policyholder of waiving the rights under the option provision by pursuing the efforts for reinstatement. There is no evidence that the company was informed that the bank was under the impression that it had only the right of reinstatement, so that the silence of the company in not disabusing this impression could work against it. This certainly was not a condition brought about by the company. (4) The bank failed to secure the application and completed health certificate for reinstatement and allowed the three months' time for exercising the option for extended insurance to run out, without a word from the company inducing such default. Upon whom does the blame lie for this? Upon the company? I do not think so.

Again it is stated: "It is undertaking to destroy its contract, after it led the bank into a position where it did not exercise its rights under the policy."

It strikes me that the company is standing upon, not attempting to destroy, the contract.

It appears to me indisputable that the plaintiff must recover, if at all, either upon the policy unaffected by the option provision, or upon the third option contained in that provision, for extended insurance.

It certainly cannot recover upon the policy which concededly lapsed, without resort to the option provision. It cannot recover upon the option provision, for it has not complied with its conditions, even if it be held that the company has waived the time condition in that provision; for there never has been an acceptance of any option until after the insured died.

I concede, of course, that the company might have waived the time limit of three months, in which the policyholder was required to give notice of his election under the option provision. But what good will that do the policyholder, in this case, when it does not appear that he ever made such election, until after the death of the insured, if then?

In *Knapp v. Homeopathic Mutual Life Ins. Co.*, 117 U. S., 411, 6 S. Ct., 807, 29 L. Ed., 960, it was held that where the insured was entitled to an option, upon lapse of policy, to have the cash surrender value applied to extended insurance, or to such insurance paid up as the amount would pay for, and which contains the proviso that unless the policy should be surrendered and the option indicated within a certain time after lapse, the policy should be void, required the insured to exercise an election within the limited time, and in default of the exercise of such election the law afforded no remedy upon the policy in favor of the holder.

In *Lichtenhan v. Prudential Ins. Co.*, 191 Ill. App., 412, it was held that where a policy provided that if it shall lapse it may be surrendered for a nonparticipating paid-up endowment, or for a cash surrender value, as indicated in a table,

the language created an option, requiring the exercise of the privilege of the beneficiary or insured within a certain time, so that a failure to exercise the option within the limited period of time terminated the right.

In the case of *Sugg v. Equitable Life Assur. Soc.,* 116 Tenn., 658, 94 S. W., 936, a policy was involved containing practically the same option provision as in the case at bar. It was there held that on the death of assured after failure to pay a premium, and failure to exercise any option, the beneficiary was only entitled to the proceeds of a paid-up policy, and not to the proceeds of term insurance.

There have occurred to me two very serious objections to the plaintiff's recovery in this case, which however do not appear to have been raised upon the trial or by the exceptions, and upon which I express no definite opinion. The action is for the face of the policy, regardless of any right under the option provision, it is conceded that the failure to pay the premium at maturity effected a lapse of the policy, and hence the plaintiff's only right would have been under the option provision; there is no allegation in the complaint supporting such a cause of action. The other is that in the form of the action which has been brought, without reference to the option provision, the plaintiff is not entitled to judgment for even the amount conceded by the insurance company under the second option, $331.72. In the case of *Gasser's Ex'x v. Michigan Mut. Life Ins. Co.,* 201 Ky., 659, 258 S. W., 102, it was held: "Obviously, the right of the insured under this provision to have the $1,000, named in the policy carried as nonparticipating term insurance, in the event of the failure to pay any premium, was by its terms made to depend on his electing to have the insurance so carried through the required notice thereof given the company within three months after the maturity of the unpaid premium, and as it is neither alleged in the petition nor amended petition that such election was made by the insured or written notice thereof given by him to the company within the time above stated, the policy by its terms

was automatically converted into a paid-up, nonparticipating policy, for a fractional amount of the sum insured as provided by the laws of Michigan. But * * * because of the absence from the petition as amended of the averments of fact necessary to that end, the appellant was not in a position to claim that the policy was valid as a paid-up nonparticipating policy for a fractional amount of the sum insured as provided by the laws of Michigan, and seek to recover such fractional amounts, hence she did not attempt to do so."

I think therefore that the judgment of the Circuit Court should be reversed, and the case remanded to that Court with direction to enter a judgment in favor of the plaintiff for $331.72, without costs.